922 So.2d 659 (2006)
STATE of Louisiana
v.
Shawn HOUSLEY.
No. 05-KA-502.
Court of Appeal of Louisiana, Fifth Circuit.
January 31, 2006.
*660 John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Plaintiff/Appellee.
Gwendolyn K. Brown, Louisiana Appellate Project, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
EDWARD A. DUFRESNE, JR., Judge.
Defendant, Shawn Housley, was charged in a bill of information on July 22, 2003, with two counts of distribution of cocaine in violation of LSA-R.S. *661 40:967(A)(1). He pled not guilty and filed several pretrial motions. He proceeded to trial on October 25, 2004. After a two day trial, he was found guilty of attempted distribution of cocaine, a lesser included offense, on each of the two counts.
The state filed a multiple offender bill of information alleging defendant to be a third felony offender based on prior convictions for possession with intent to distribute marijuana and attempted distribution of cocaine. After a multiple bill hearing, the trial court found defendant to be a third felony offender and sentenced him to twenty-two years on each count. Defendant now appeals.

FACTS
On February 23, 2003, Officers B.J. Rock and Hayes Caddou were working undercover for St. John the Baptist Sheriff's Office in an attempt to purchase illegal drugs from street level dealers. They were in a vehicle equipped with video surveillance cameras when they came in contact with two black males, one of whom was defendant, in a small compact car on Dove Street. Agent Caddou, who was driving, asked the occupants for "40 hard," which is street slang for crack cocaine. The occupants did not respond. As Agent Caddou began to drive off, the passenger, defendant, nodded his head indicating he had the crack cocaine. Agent Caddou drove around the block and sat in a park area for awhile. After no one showed up, Agents Caddou and Rock, who was the passenger, left and went to the Mini Hui Mart store.
Agent Rock entered the store and purchased beer. While Agent Rock was in the store, defendant pulled into the parking lot of the store. Defendant made contact with Agent Caddou, who was sitting in his vehicle, and indicated for him to go inside the store. Agent Caddou went inside the store at which time the drug transaction occurred. Defendant placed the crack cocaine on top of a beer box and Agent Caddou put forty dollars inside a cooler and walked out of the store with the cocaine.
Approximately one month later, on March 21, 2003, Agent Caddou again purchased crack cocaine from defendant at the Mini Hui Mart. On that date, Agents Caddou and Rock were again working undercover and went to the Mini Hui Mart. This time, Agent Rock wore a body camera. Agent Rock entered the store and made contact with defendant. Defendant asked for Agent Caddou so Agent Rock returned to his truck while Agent Caddou went inside the store. Once inside, Agent Caddou asked defendant for "40 hard." Defendant put the crack cocaine on a Busch beer can and Agent Caddou placed forty dollars inside the cooler.
Defendant was identified as the perpetrator by Sergeant Nolan Anderson with the St. John the Baptist Sheriff's Office who reviewed the videotape from the February 23, 2003 transaction and recognized defendant on the tape. Also, both Agents Caddou and Rock identified defendant in court as the person with whom the drug transactions occurred.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In his first two assignments, defendant complains about improper argument by the prosecutor during voir dire examination. Specifically, defendant contends that the trial court erred in denying his objection and overruling his motion for a mistrial when the prosecutor argued the actual facts of the case to prospective jurors during voir dire. Defendant contends the prosecutor's questions during voir dire impermissibly sought a commitment of *662 how the prospective jurors would vote in light of the actual facts of the case.
The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Francis, 95-194 (La.App. 5 Cir. 11/28/95), 665 So.2d 596, 601. It is impermissible for a party interviewing a prospective juror to ask a question or pose a hypothetical which would demand a commitment or prejudgment from the juror or which would pry into the juror's opinions about issues to be resolved in the case. State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, 19, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001). Further, it is improper for counsel to question prospective jurors about their reaction to evidence which may be received at trial. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 924, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear abuse of that discretion. LSA-C.Cr.P. art. 786. In evaluating the fairness of the trial judge's ruling, the entire voir dire examination should be considered. State v. Francis, 665 So.2d at 601.
Defendant's objection came during the prosecutor's voir dire examination of the second jury panel. The prosecutor began his voir dire by explaining the case involved the purchase of drugs through an undercover operation. He reviewed the defendant's presumption of innocence and the state's burden of proof. The prosecutor then questioned the prospective jurors about evidence and the credibility of police officers. Specifically, the following dialogue occurred:
MR. BECNEL:
* * *
Now, let's get to the testimony and the evidence. The evidence is going to come not from what I say or what Mr. Lillian says, not from what Judge Snowdy says. The evidence is going to come from sworn testimony, according to court rules, by the witnesses, by police officers, by scientists from the Louisiana State Police Lab, by the actual cocaine that was allegedly sold to an undercover agent. That's going to be the evidence.
The mere fact that a person is a police officer or wears a police uniform doesn't give them any corner on the truth. They will testify and their testimony should be heard just like anybody in this courtroom. Do all of you agree that you will listen to the testimony of a police officer just like anybody else, not giving it anymore weight or any less weight? But you will determine whether it's credible, whether it makes sense, and whether it's believable. Do you agree with that?
(AFFIRMATIVE VERBAL RESPONSE BY PANEL.)
* * *
Would any of you hold it against the Sheriff's Office, St. John the Baptist Parish, Wayne Jones, and the District Attorney's Office for conducting an undercover operation; that is, to go with a  not uniformed police officer, in plain clothes, to go out into the street to try and find out where the drugs are and to make drug buys. Do any of you hold that against the Sheriff's Office for conducting that type of operation?
(NEGATIVE VERBAL RESPONSE.)
*663 Do any of you think it's unfair that they shouldn't do that?
(NEGATIVE VERBAL RESPONSE.)
Now, during the course of this case, you're going to hear the testimony of the police officers who actually made the buy from this defendant on two occasions. And you are going to hear and see certain video and audio, either through a camera on a car or a body camera. However, what I'm going to ask is: regardless of how good or how bad the video is, when you hear the testimony of these police officers in corroboration with the video, can you convict an individual based on the testimony of the police officers if all of the video is not there?
At this point, defense counsel objected on the basis the prosecutor was arguing the specific facts of the case. The trial judge overruled the objection stating it was a salient question given the vagueness of videos in some cases. The prosecutor proceeded to ask each prospective juror, "[c]an you convict an individual based on the testimony of an undercover police officer who made the purchase and can identify the defendant?"
One prospective juror asked the prosecutor for more details. The prosecutor responded by explaining the video would not be like a movie and the prospective juror audibly concluded there would be some ambiguity in the video. Defense counsel again objected and the trial judge instructed the prosecutor not to elaborate. The prospective juror ultimately indicated he might need the video in addition to the testimony of the officer before he could convict.
The prosecutor concluded his voir dire examination by asking each of the prospective jurors to "listen to all the evidence, and do not prejudge the case until the end." Defense counsel then conducted his own voir dire examination. During the bench conference for challenges, defense counsel moved for a mistrial on the basis the prosecutor improperly asked the prospective jurors for a prejudgment of the facts of the case. The trial judge denied the motion for a mistrial finding the prosecutor did not cross the threshold.
Having reviewed the voir dire examination, we find that the prosecutor's examination was permissible in order to ascertain the prospective jurors' attitudes towards the testimony of an eyewitness police officer. In State v. Dyer, 95-2368 (La.App. 1 Cir. 10/2/96), 682 So.2d 278, 280, writ denied, 96-2570 (La.3/21/97), 691 So.2d 81, the First Circuit stated that, "[q]uestions regarding the weighing of testimony by police officers are a proper subject for voir dire examination." The court in Dyer concluded the trial judge committed reversible error when he refused to allow defense counsel to inquire into jurors' attitudes concerning police officers or eyewitnesses as the proffered voir dire examination "would have elicited responses regarding a potential juror's weighing of testimony by the eyewitness police officers and would have allowed defendant to explore any prejudices, predispositions, or misunderstandings relevant to central issues" in the case. State v. Dyer, 682 So.2d at 281.
Additionally, we conclude that the questioning by the prosecutor did not seek a promise or commitment regarding the verdict. The prosecutor inquired whether the prospective jurors "could" convict based on certain circumstances, not that they "would" convict. In State v. White, 39,745 (La.App. 2 Cir. 6/29/05), 907 So.2d 228, 231, the Second Circuit concluded that the prosecutor's question to each prospective juror of whether he or she could vote *664 guilty if the state proved the defendant's guilt beyond a reasonable doubt did not solicit a promise or commitment regarding the verdict, and therefore, was not improper.
Based on the foregoing discussion, we find that the arguments raised by defendant in these two assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assigned error, defendant argues that the trial court erred by admitting into evidence videotapes of the alleged drug transactions. He asserts that the videotapes of the events surrounding the drug transactions should have been excluded because their existence and intended use were not disclosed prior to trial despite his motion for discovery seeking such videotapes. Defendant further asserts the videotapes should have been excluded because the officer who wore the recording device was not present in court to identify or authenticate the videotapes. Defendant maintains the admission of the tapes deprived him of due process and his right to present a defense. He contends he was lulled into a misapprehension of the strength of the state's case.
Prior to trial, on August 12, 2003, defendant filed a motion for discovery in which he requested all video and audio tapes. The state answered defendant's discovery on September 4, 2003, and specifically stated there were no video or audio tapes. On July 2, 2004, defendant filed a motion for additional discovery of an audiotape. The parties appeared in court on July 12, 2004, at which time defense counsel questioned the state about audiotapes. There is no transcript of this exchange but only a minute entry that states, "STATE SAYS THERE IS NO AUDIO TAPE, ONLY THE VIDEO TAPE." A little over three months later, defendant went to trial.
On the first day of trial, a jury was selected and Agent B.J. Rock testified for the state. During his testimony, Agent Rock stated the vehicle in which he was riding was equipped with a video camera. He also stated that during the second drug transaction on March 21, 2003, he wore a body camera. At the conclusion of Agent Rock's testimony, Agent Rock was released from his subpoena due to other commitments. The state then indicated its intent to call Detective Troy Hidalgo and to play a video. There was no objection by defense counsel. Before Detective Hidalgo was called, the trial judge recessed trial for the night.
Prior to the first witness on the second day of trial, defense counsel objected to the videotape that the state intended to show. Defense counsel indicated he had not seen the videotape that was taken with the body camera worn by Agent Rock. He objected to the admissibility of the videotape on the basis Agent Rock was not available to identify or authenticate the tape. Defense counsel admitted he was at fault for agreeing to a recess on the first day of trial knowing that Agent Rock would not be available to testify the next day. At no time did defense counsel object to the admissibility of the videotape on the basis of delayed disclosure. Noting that Detective Hidalgo could possibly establish his involvement/connection with the videotape, the trial judge overruled defendant's objection to its admissibility. Defendant again objected to the videotape when it was played for the jury during Detective Hidalgo's testimony.
On appeal, defendant challenges the admissibility of the videotapes on the basis of delayed disclosure, which is a completely different ground from the grounds specified at trial. To preserve the right to *665 seek appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error as well as the grounds for that objection. LSA-C.Cr.P. art. 841. A new ground for an objection cannot be presented for the first time on appeal. State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949-950, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294. Therefore, defendant's argument is not properly before this court for review.
Defendant also contends the videotape was inadmissible because Agent Rock, who wore the recording device, was not available to authenticate the tape.[1]
Before it can be admitted at trial, demonstrative evidence must be properly identified. LSA-C.E. art. 901. A sufficient foundation for the admission of evidence is established when the evidence as a whole shows it is more probable than not that the object is one connected with the crime charged. The identification can be visual, through testimony. The identification can also be accomplished through chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence. State v. Cosey, 97-2020 (La.11/28/00), 779 So.2d 675, 678, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001), State v. Arita, 04-39 (La.App. 5 Cir. 3/1/05), 900 So.2d 37, 43.
The evidence as to custody need not eliminate all possibilities that an object has been altered. It is sufficient if the evidence shows it is more likely than not that the object is one connected with the case. Once a proper foundation has been laid with regard to a piece of evidence, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than the admissibility. Ultimately, a chain of custody is a factual matter for determination by the jury. State v. Arita, 900 So.2d at 43.
Detective Troy Hidalgo testified he was in charge of the video surveillance in the present undercover operation. He stated he installed and retrieved the videotapes used in the surveillance equipment during the February 25th and March 21st drug buys. He also stated he hooked up the body camera to Agent Rock. Detective Hidalgo testified he brought the videotapes from both drug transactions to court that day at which time three videotapes were played for the jury. Based on this testimony, we find that the videotapes were properly authenticated as being the videotapes of the events surrounding the drug transactions on February 25, 2003 and March 21, 2003, in which defendant was involved. Thus, the trial court properly admitted the videotapes into evidence, and this assigned error is likewise without merit.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case.
For the reasons set forth herein, we affirm defendant's convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] It appears defendant is only challenging the admissibility of the videotape resulting from the body camera as opposed to the two videotapes taken from the vehicle surveillance equipment.