STATE OF LOUISIANA

VERSUS

LARRY DILLON, JR.

NO. 23-KA-423

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 17,369, DIVISION "B"
HONORABLE NGHANA LEWIS, JUDGE PRESIDING

June 05, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges John J. Molaison, Jr.,
Scott U. Schlegel, and Timothy S. Marcel

<u>**AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED;**</u>
<u>**REMANDED FOR RESENTENCING**</u>
 **TSM**
 **JJM**
 **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Bridget A. Dinvaut
Geoffrey M. Michel
J. Philip Prescott, Jr.

COUNSEL FOR DEFENDANT/APPELLANT,
LARRY DILLON, JR.
David E. Stanley

**MARCEL, J.**

Defendant, Larry Dillon, Jr., appeals his convictions and sentences for sexual battery in violation of La. R.S. 14:43, home invasion in violation of La. R.S. 14:62.8, and the second-degree rape of L.S. in violation of La. R.S. 14:42.1. For the following reasons, defendant's convictions are affirmed, his habitual offender sentence is vacated, and the matter is remanded for resentencing.

## PROCEDURAL HISTORY

On December 11, 2017, defendant was charged in a three-count bill of information with sexual battery, home invasion, and second-degree battery, in violation of Louisiana Revised Statutes 14:43.1, 14:62.8, and 14:42.1, respectively. Named in the bill of information as the victim of these crimes is an individual identified as "L.S."  On July 16, 2021, a jury unanimously found defendant guilty as charged on all counts. Thereafter, on August 5, 2021, the State filed a motion for defendant to be sentenced as a habitual offender alleging that defendant was a second-felony offender.

On August 16, 2021, defendant filed three post-trial motions: a motion for post-verdict judgment of acquittal, a motion for new trial, and a motion for appeal. The trial court granted the motion for appeal the same day.  Motions for post-verdict judgment of acquittal and for new trial were scheduled for hearing on August 27, 2021, but were later continued until November 18, 2021.

After denial of defendant's motions for post-verdict judgment of acquittal and for new trial at the hearing on November 18, 2021, the trial court imposed sentences for each of the three crimes for which defendant was convicted. Thereafter, on January 13, 2022, the trial court denied defendant's Motion to Reconsider Sentence, accepted defendant's stipulation to being a three-time felony offender, and imposed an enhanced multiple offender sentence.

As previously noted, the trial court granted defendant's motion for appeal before adjudication of defendant's motions for post-verdict judgment of acquittal and for new trial. In defendant's first appeal, this Court found the trial court prematurely granted defendant's motion for appeal before sentencing defendant and ruling on defendant's post-trial motions. *State v. Dillon*, 22-229 (La. App. 5 Cir. 2/27/23), 358 So.3d 934. Accordingly, this Court vacated defendant's multiple offender adjudication, his original sentences for the underlying convictions, the enhanced multiple offender sentences, and the trial court's rulings on his post-trial motions. *Id.* The matter was remanded to the trial court for rulings on defendant's motions for post-verdict judgment of acquittal and new trial. *Id.* Additionally, in its instructions to the trial court to resentence defendant in the event his post-trial motions were denied, this Court also pointed out the trial court failed to vacate defendant's original sentences before imposing the enhanced multiple offender sentences. *Id.*

After this matter was remanded to the trial court, defendant filed a supplemental and amended motion for post-verdict judgment of acquittal and supplemental and amended motion for new trial. Those motions were denied after a hearing on May 3, 2023. After denial of his post-trial motions, defendant waived sentencing delays, and the trial court proceeded to impose sentence on the same date. Defendant was sentenced to ten years imprisonment for the crime of sexual assault, thirty years imprisonment for the crime of home invasion, and forty-five years imprisonment for the crime of second-degree rape, which the trial court ordered served concurrently. The sentences imposed for sexual assault and second-degree rape were ordered without benefit of parole, probation, and suspension of sentence. Afterwards, the trial court issued Judgment with Reasons on May, 11, 2023. Defendant filed a Motion to Reconsider Sentence on May 18, 2023, asserting the sentence imposed on him was excessive.

On June 20, 2023, the State re-filed its motion to sentence defendant as a habitual third-felony offender. The trial court denied defendant's motion to reconsider sentence on the same date. Defendant then stipulated that he was the same person identified in the multiple bill as to each of the prior offenses. The transcript reflects that the trial court thereafter sentenced defendant as a third-felony offender to fifteen years imprisonment for the crime of sexual battery, forty-five years imprisonment for the crime of home invasion, and fifty years imprisonment for the crime of second-degree battery, which were ordered to be served concurrently. Each enhanced sentence was imposed at hard labor without benefit of parole, probation, or suspension of sentence. Thereafter, on July 12, 2023, defendant filed a motion for appeal of his convictions and sentences.

## FACTUAL BACKGROUND

On September 18, 2017, L.S. was home asleep on her sofa in the living room of her La Place residence. She was living alone at the time because her husband of twenty years was incarcerated. She testified to being awakened when someone kicked the sofa, and was told in a male voice to get on the floor. When she tried to turn around, the man placed both of her hands behind her back and put his hand over her mouth. The man then dragged her to the floor face down and put his body on top of hers. She recalled screaming and crying while he was "humping on" her. In her struggle, she testified to biting the attacker's finger.

After her efforts to resist were overpowered by the man, who she described as being very heavy, big, and tall, L.S. was asked, "Where's the money?" She responded that money was in her purse and offered to take him to the bank. The man then pulled her off the floor and led her into the bedroom. He instructed she keep her mouth shut and eyes closed or he was going to "f-ing kill" her.

She testified that the man walked her to the bed. There, he put her face down, placed a pillow over her head, and penetrated her vagina with his penis.

During the rape, she recounted, the man instructed she tell her husband to pay him the money he was owed. In addition to vaginal sex, L.S. testified the man also engaged in oral sex with her.

Afterwards, he took her off the bed and instructed she keep her mouth and eyes shut or he would "f-ing kill" her. She was then led into the kitchen by her hands, where money was removed from her purse. Then, she was led to and instructed to open the front door. After opening the front door, the man led her to the hall bathroom. There, he informed her that he was going to let her go and instructed she count to one hundred. She testified the man informed her of knowing where she worked if she were to call the police or report the incident.

Once the man left her house, she testified to closing the front door, putting on short pants, grabbing her purse, getting into her car, and driving to the hospital. Nothing in her house was moved before leaving. She recalled having blood on her lip when she drove to the hospital. After her arrival, hospital personnel called the police.

During her trial testimony, L.S. was presented with several crime scene photographs taken of her home after the incident. L.S. testified that she did not typically leave the windows of her home open as depicted in the photographs. In other photographs, she noted the sectional sofa had separated during the physical assault which resulted in her being on the living room floor. She testified that blankets and other items shown in photographs on the floors of her home were not in those locations before the incident. Another photograph presented to L.S. during her testimony was a turquoise blouse on the living room floor. L.S. testified that she was not wearing that blouse at the time of the incident, the blood stain was not present before the incident, and it would not have been just left on the floor. She testified to cleaning her home every few days, which included beneath and behind her living room sofa.

Detective Ann Taylor was the lead investigator of the reported crimes. She testified to meeting L.S. on the morning of the incident and observed bruises on her chin, back, and neck, as well as abrasions on both elbows. Detective Taylor also described an injury on L.S. from the right side of her vaginal area to her hip.

Deputy Sheriff Ryan LeBlanc was the assigned crime scene technician on this case. He testified to collecting a turquoise blouse piled up against the living room floor, near the sectional sofa. Deputy LeBlanc described a reddish stain on the blouse which he believed could be blood. Also collected by Deputy LeBlanc was a belt buckle from the middle of the bedroom floor.

Approximately three weeks after the incident, the crime lab's DNA section contacted Lieutenant Christy Chauvin to inform her of the results of its testing. Lieutenant Chauvin testified the crime lab reported a "CODIS hit" from samples tested which identified defendant. Based on the crime lab report, defendant was brought in for questioning.

In her trial testimony, Lieutenant Chauvin recounted her interview of defendant. Defendant stated he heard about a woman being attacked in her home on the street where L.S. lived. After being informed that his DNA was found in the residence, defendant responded "no way." He reported being acquainted with L.S.'s husband, "Mike." Defendant informed that he and "Mike" sometimes partied with women and used narcotics in the residence when L.S. worked nights. He was aware that "Mike" was incarcerated and denied knowing L.S. Defendant admitted to having been in their residence approximately three times but the last visit was more than a year before. He reported using the residence as a place to have sex with women when L.S. was working nights. In his past visits to the residence, defendant reported using the front door to enter but admitted to entering through a window and taking a shower in the home on one occasion. Defendant volunteered to Lieutenant Chauvin that he had lost a belt buckle in the residence.

Defendant's statements, Lieutenant Chauvin stated, reflected his familiarity with the residence's layout.

In their investigation, Lieutenant Chauvin testified, it was learned that defendant drove a maroon Yukon. Crime camera video footage in the subdivision which L.S. lived was reviewed. She testified that a vehicle fitting the description of defendant's Yukon was recorded in the area right after the incident. That vehicle was also observed in photographs traveling along Airline Highway at 4:18:53 a.m. and 4:19 a.m., toward the Central Avenue area where defendant lived. According to Lieutenant Chauvin, this would be a customary route taken between the defendant's residence and L.S.'s residence. Lieutenant Chauvin testified that the 9-1-1 call reporting L.S.'s rape was received at 4:15 a.m. The call was made from Ochsner River Parish Hospital in St. John Parish, where L.S. appeared after leaving her home after the incident.

The State also presented evidence of DNA analysis at trial. Andrew Ingram, formerly employed by the Louisiana State Police Crime Lab as a DNA analyst, was accepted by the trial court as an expert in the field of DNA analysis. Mr. Ingram testified that he tested the turquoise shirt found on the floor of the victim's living room. His analysis indicated that the blood of defendant, Larry Dillon Jr., was on the shirt. Mr. Ingram also testified that he tested the swabs contained in the victim's sex crimes kit. He asserted that the DNA profile obtained from the victim's external genitalia swab was consistent with the DNA profile obtained from the defendant. Mr. Ingram stated the defendant and all male individuals within his biological paternal lineage cannot be excluded as the donor of the male DNA in this profile.

## DISCUSSION

On appeal, defendant asserts five assignments of error. Each assignment of error focuses on the evidence supporting identification of defendant as the

perpetrator of the sexual assault, home invasion, and second degree rape. The first assignment of error raised by defendant avers the trial court erred in finding the evidence was sufficient to identify him as perpetrator of these crimes. In the second and third assignments of error, defendant contends the trial court erred in denying of his post judgment of acquittal and motion for new trial, respectively. The fourth assignment of error contends the trial court erred in denying defendant's motion in limine to exclude testimony of the State's DNA expert and in admitting the DNA rape kit into evidence at trial. Defendant's fifth assignment of error challenges the constitutionality of the sentences imposed by the trial court. Each assignment of error is addressed below, beginning with assignment of error number one, followed by assignment of error number four, then assignment of error number two, then assignment of error number three, and finally, assignment of error number five.

*Sufficiency of the evidence*

In his first assignment of error, defendant argues that the trial court erred in finding that the evidence was sufficient to identify him as the perpetrator of these crimes and erred in finding that all of the elements of sexual battery, home invasion, and second degree rape have been proven beyond a reasonable doubt. Specifically, he argues that the evidence was insufficient to support his convictions because the State failed to prove beyond a reasonable doubt his identity as the perpetrator of the crimes.

Supporting his argument in this assignment of error, defendant points out that L.S. testified she never saw the person who attacked her and could not identify his skin color or his race. Further, defendant contends the blood stain from the turquoise shirt does not connect him to the crimes. Finally, he contends the DNA evidence found on the victim does not exclude others in his biological lineage.

In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, *writ denied*, 10-1357 (La. 1/7/11), 52 So.3d 885.

When circumstantial evidence is used to prove the commission of the offense, Louisiana Revised Statute 15:438 provides, "[A]ssuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether a defendant's suggested hypothesis of innocence offers an exculpatory explanation of events. Rather, the reviewing court must evaluate the evidence in the light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Baham*, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, *writ denied*, 15-40 (La. 3/24/16), 190 So.3d 1189.

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification to carry its burden of proof. *State v. Ray*, 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, *writ denied sub nom. State ex rel. Ray v. State*, 13-1115 (La. 10/25/13), 124 So.3d 1096.

The credibility of the witnesses will not be reweighed on appeal, as it is within the sound discretion of the trier of fact to accept or reject, in whole or in part, the testimony of any witness. *State v. Rowan*, 97-21 (La. App. 5 Cir.

4/29/97), 694 So.2d 1052, 1056. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Dixon*, 07-915 (La. App. 5 Cir. 3/11/08), 982 So.2d 146, 153, *writ denied sub nom. State ex rel. Dixon v. State*, 08-987 (La. 1/30/09), 999 So.2d 745. The victim's testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *State v. Perkins*, 11-162 (La. App. 5 Cir. 12/28/11), 83 So.3d 250, 255.

In the instant case, for the reasons which follow, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support defendant's convictions of home invasion, second degree rape, and sexual battery. We also find that the State negated any reasonable probability of misidentification of defendant to carry its burden of proof.

At trial, L.S. provided descriptive testimony of the incident. She recounted being awakened, physically assaulted, and later, sexually assaulted in her home. Admitting she did not see the perpetrator, L.S. described her attacker only as a very big and heavy male. Testimonial evidence of law enforcement investigators, as well as crime scene photographs and medical records corroborate L.S.'s testimony. Evidence supporting elements of the crime of home invasion, sexual assault, and second-degree rape are not controverted.

Rather, defendant contends on appeal that he was not the perpetrator of those crimes. He points to L.S.'s inability to identify her attacker beyond descriptions of male, very large, and tall. The evidence presented at trial identifying the perpetrator was analysis of bodily fluids recovered from an article of clothing at the crime scene and from L.S.'s sexual assault examination. Additionally, evidence was presented that a vehicle meeting the description of defendant's

vehicle was recorded traveling in proximity to L.S.'s home in the early morning hours after the crimes. Testimony was also presented that another individual was investigated and ruled out as a suspect.

Blood stains on a turquoise blouse found near the sofa where L.S. testified to biting her attacker matched defendant's blood. DNA belonging to defendant and other males of his biological paternal lineage was contained in bodily fluids obtained in the course of L.S.'s sex assault medical examination. Also, defendant made numerous incriminating statements during his interview with law enforcement three weeks after the incident, including that he lost a "belt" in the victim's residence.

In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support defendant's convictions of home invasion, second degree rape, and sexual battery. We also find that the State negated any reasonable probability of misidentification of defendant to carry its burden of proof. This assignment does not have merit.

*Denial of Motion in Limine*

In his fourth assignment of error, defendant asserts the trial court erred in denying his motion in limine to exclude testimony from the State's DNA expert, Mr. Ingram, and by admitting the sex crimes kit during the testimony of the crime scene technician, Officer LeBlanc. He argues that the sex crimes kit was admitted without a proper foundation being laid to ensure the sex crimes kit's integrity and reliability. Admitting this evidence, defendant asserts, violated his rights of due process, to confront and cross-examine witnesses against him, and to a fair trial.

Several pre-trial notices of its intent to use and introduce certificates of analysis from the crime lab were filed by the State. Attached to one of the notices was a crime lab report documenting that the DNA supervisor, Miles Robichaux, received the victim's sex crimes kit from the SJPSO via Jim Brower on September

20, 2017. The crime lab report indicated that numerous swabs were submitted to the lab for testing.

During trial, defense counsel presented an oral motion in limine to exclude the sex crimes kit from evidence. The trial court found that the sex crimes kit was completed prior to the development of defendant as a suspect, that no confrontational clause violation occurred, and that the defense may always subpoena for trial the medical personnel who performed the DNA testing. In denying the defense motion, the trial court cited *Williams v. Illinois*,[1] and *State v. Bolden*.[2]

The Louisiana Code of Evidence requires demonstrative evidence be properly identified before it is admitted at trial. La. C.E. art. 901. Identification may be visual (i.e., by testimony at the trial that the object exhibited is the one related to the case) or it may be by chain of custody (i.e., by establishing the custody of the object from the time it was seized to the time it was offered in evidence). *State v. Cosey*, 97-2020 (La. 11/28/00), 779 So.2d 675, 678, *cert. denied*, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001); *State v. Brooks*, 01-864 (La. App. 5 Cir. 1/29/02), 807 So.2d 1090, 1099. Evidence as to custody does not have to eliminate all possibility that the object has been altered. Rather, for admission, it suffices that it is more probable than not that the object is the one

---

[1] "The use of DNA evidence to exonerate persons who have been wrongfully accused or convicted is well known. If DNA profiles could not be introduced without calling the technicians who participated in the preparation of the profile, economic pressures would encourage prosecutors to forgo DNA testing and rely instead on older forms of evidence, such as eyewitness identification, that are less reliable. The Confrontation Clause does not mandate such an undesirable development. This conclusion will not prejudice any defendant who really wishes to probe the reliability of the DNA testing done in a particular case because those who participated in the testing may always be subpoenaed by the defense and questioned at trial." *Williams v. Illinois*, 567 U.S. 50, 58-59, 132 S.Ct. 2221, 2228, 183 L.Ed.2d 89 (2012).

[2] In *State v. Bolden*, 11-2435 (La. 10/26/12), 108 So.3d 1159, 1161-62, the Louisiana Supreme Court stated:
> No error under the Confrontation Clause occurs when a DNA expert testifies that in his or her opinion the DNA profile developed from a sample taken from defendant matches the DNA profile developed by other, non-testifying technicians from biological samples taken from the victim of a sexual assault if: the tests on the victim's samples were conducted before the defendant was identified as the assailant or targeted as a suspect, *Williams*, 567 U.S. at - - -, 132 S.Ct. at 2242-43.

connected to the case. *State v. Addison*, 03-1421 (La. App. 5 Cir. 3/30/04), 871 So.2d 536, 551, *writ denied*, 04-1291 (La. 10/29/04), 885 So.2d 584.

A defect in the chain of custody goes to the weight of the evidence rather than its admissibility. *State v. Priest*, 18-518 (La. App. 5 Cir. 2/6/19), 265 So.3d 993, 1001, *writ denied*, 19-418 (La. 5/20/19), 271 So.3d 201. Ultimately, a chain of custody is a factual matter for determination by the jury. *State v. Housley*, 05-502 (La. App. 5 Cir. 1/31/06), 922 So.2d 659, 665, *writ denied*, 06-1183 (La. 11/17/06), 942 So.2d 531. A trial court is vested with great discretion in determining whether a party has laid a proper foundation for the introduction of evidence. *Priest*, *supra*.

At trial, the State presented evidence that L.S. drove herself to a hospital after being raped. Medical records from Tulane Medical Center documenting L.S.'s reporting to hospital personnel were admitted into evidence without objection. Those medical records also document that a sex crimes kit was done and that Officer LeBlanc from the SJPSO appeared at the hospital to take custody of the sex crimes kit. Distribution of copies of the sex assault packet to the rape advocate, the evidence transporting officer, and the emergency room director is also documented in the medical records.

Ryan LeBlanc, the crime scene technician, testified to his role as the evidence transport officer. At trial, he described the sex crimes kit as a bag containing sealed smaller bags and envelopes. Officer LeBlanc recounted leaving Tulane Medical Center with the evidence and traveling to the St. John the Baptist Parish Sheriff's Office, where he secured the sex crimes kit in refrigerated storage. From that location, the evidence was transported by Lieutenant Brower to the crime lab for analysis. Officer LeBlanc delivered the sex crimes kit to trial, and testified to documenting the chain of custody for that evidence. The defense's objection to that testimony was overruled by the trial court.

Mr. Ingram, the State's DNA expert who was formerly employed by the Louisiana State Police Crime Lab, testified to testing the swabs contained in the victim's sex crimes kit. Based on results of his testing, it was his opinion that defendant and all male individuals within his biological paternal lineage cannot be excluded as the donor of the male DNA in this profile. Mr. Ingram identified the report of his findings, which was admitted into evidence without objection.

Further, as was pointed out by the trial court, the sex crimes kit was completed prior to defendant's development as a suspect, and therefore, there was no incentive to produce anything other than a scientifically sound and reliable profile. *See Williams v. Illinois*, *supra*. Also, the defense had the opportunity to subpoena those individuals who participated in the DNA testing and to question them at trial. *Id.*

The record of this case supports the finding that it was more probable than not that the tested scientific evidence was connected to the instant case. Further, there is no indication that the evidence was tampered with or compromised or that the testing procedures were defective. The jury heard the evidence establishing the chain of custody of the State's DNA evidence and determined that the chain was reliable. Because the sex crimes kit was properly admitted into evidence, any testimony in connection with the kit was properly admitted as well. As such, we find that the trial court did not abuse its discretion by admitting the sex crimes kit and the testimony regarding the kit into evidence. Based on the foregoing, this assignment of error does not have merit.

*Denial of Motion for Post Verdict Judgment of Acquittal*

In assignment of error number two, defendant argues that the trial court erred in denying his motion for a post verdict judgment of acquittal. He contends no rational juror could have found that the State met its burden of proof to negate any reasonable probability of misidentification of defendant as the perpetrator of

the alleged offenses. As such, defendant avers that no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient under the *Jackson* standard to support his convictions. [3]

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post verdict judgment of acquittal pursuant to Louisiana Code of Criminal Procedure article 821. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 816, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. Louisiana Code of Criminal Procedure article 821(B) provides, "A post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."

Considering we have found the trial court did not err by admitting the sex crimes kit as well as testimony concerning the sex crimes kit into evidence, and that the evidence was sufficient to support the jury's verdicts, we also find that the trial court did not err by denying his motion for post-verdict judgment of acquittal on this ground.[4] This assignment of error does not have merit.

*Denial of Motion to New Trial*

In assignment of error number three, defendant argues that the trial court erred in denying his motion for a new trial. Defendant filed a motion for new trial on August 16, 2021, arguing that admission of the sex crimes kit into evidence was highly prejudicial and resulting in an unjust verdict. The trial court's denial of that motion was vacated and remanded by this Court for jurisdictional reasons. *See Dillon, supra.* On April 11, 2023, defendant filed a supplemental and amended

---

[3] This assignment is discussed separately from Assignment of Error Number One because it also involves the alleged improper admission of evidence. Defendant and the State also address this assignment separately from Assignment of Error Number One.

[4] *See* discussion under Assignment of Error Number Four.

motion for new trial, arguing the verdict was contrary to the law and the evidence on the grounds the sex crimes kit was improperly admitted at trial.

On remand, the trial court denied defendant's motion for new trial on May 3, 2023. As was stated above, in a written ruling dated May 11, 2023, the trial court found that the introduction of the sex crimes kit at trial was not in violation of defendant's due process rights, but even if the kit had been excluded, other evidence permissibly introduced at trial was sufficient to support the verdicts. It further found that defendant was not prejudiced by the introduction of the sex crimes kit evidence because other DNA evidence was introduced at trial.

Defendant asserts he is entitled to a new trial because errors by the trial court deprived him of the rights to due process, to confront and cross examine witnesses against him, and to a fair trial.[5] A motion for new trial under Louisiana Code of Criminal Procedure article 851 is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. *State v. Paul*, 15-501 (La. App. 5 Cir. 1/27/16), 185 So.3d 188, 198. A trial judge's ruling on a motion for new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. *State v. Richoux*, 11-1112 (La. App. 5 Cir. 9/11/12), 101 So.3d 483, 490, *writ denied*, 12-2215 (La. 4/1/13), 110 So.3d 139.

Under Louisiana Code of Criminal Procedure article 851(B)(1), the trial court shall grant a motion for new trial whenever the verdict is contrary to the law and evidence. However, considering we have found that the evidence was sufficient to support defendant's convictions, we find that the trial court's denial of his motion for new trial on this ground was not an abuse of its discretion.[6]

---

[5] This assignment is discussed separately from Assignment of Error Number One because it involves the alleged improper admission of evidence. Defendant and the State also address this assignment separately.
[6] *See* discussion under Assignment of Error Number One.

Next, defendant argues that he is entitled to a new trial based on Louisiana Code of Criminal Procedure article 851(B)(2), alleging that the trial court's ruling on his objection to the sex crimes kit and to the testimony regarding that evidence shows prejudicial error. As we have found the trial court did not abuse its discretion by admitting the sex crimes kit and testimony regarding it, we find that the trial court did not abuse its discretion by denying defendant's motion for new trial on this ground.

Lastly, defendant claims that he is entitled to a new trial based on the interests of justice as set forth in Louisiana Code of Criminal Procedure article 851(B)(5). The grant or denial of a motion for new trial based on the interests of justice should not be disturbed on review unless the trial court abused its great discretion. *State v. Guillory*, 10-1231 (La. 10/8/10), 45 So.3d 612, 615. We find the trial court did not abuse its discretion in denying the motion for new trial on this ground for the reasons more fully discussed in addressing the sufficiency of evidence and admissibility of the sex crimes kit and testimony regarding it. This assignment of error does not have merit.

*Excessive Sentence*

In assignment of error number five, defendant argues that the trial court imposed a sentence that is constitutionally excessive and grossly disproportionate to the severity of each offense. While defendant expressly argues that his enhanced sentences are excessive, his brief also infers an argument that his original sentences are excessive as well, stating "A review of the statutory penalties for the offenses of sexual battery, home invasion, and second-degree rape establish that the maximum sentence imposed by the Court for each offense is constitutionally excessive and this error was carried into Dillon's sentencing as a habitual offender."

On May 3, 2023, following remand, the trial court sentenced defendant to ten years imprisonment in the Department of Corrections without benefit of parole, probation, or suspension of sentence for the crime of sexual assault; thirty years imprisonment in the Department of Corrections for the crime of home invasion; and forty years imprisonment in the Department of Corrections without benefit of parole, probation, or suspension of sentence for the crime of second degree battery, with the sentences to run concurrently. From those sentences, defendant filed a Motion to Reconsider Sentence, arguing that his three maximum original sentences were excessive.

On June 20, 2023, the State filed State's Motion to Sentence Defendant as a Habitual Offender alleging defendant to be a third-felony offender.[7] On that same date, after the trial court denial of his Motion to Reconsider Sentence, defendant stipulated that he was the same person identified in the multiple bill as to each of the prior offenses. The trial court proceeded thereafter to sentence defendant as a third-felony offender to fifteen years imprisonment at hard labor for sexual assault, forty-five years imprisonment at hard labor for home invasion, and fifty years imprisonment at hard labor for second degree rape. Each sentence was ordered served without the possibility of parole and suspension of sentence, with all of the sentences to run concurrently.

On review of the record, neither the transcript, nor the minute entry, nor the uniform commitment order reflect that the trial court vacated the original sentences prior to imposing the enhanced sentences. When a defendant's original sentence on an underlying offense has not been vacated by the court at the time of a defendant's sentencing as a habitual offender, the original sentence remains in effect and the subsequent sentence as a habitual offender is null and void. *State v. Lyles*, 17-405 (La. App. 5 Cir. 2/21/18), 239 So.3d 1055, 1057.

---

[7] This pleading appears to be a multiple offender bill of information.

Therefore, we vacate the enhanced sentences and remand the matter to the trial court for resentencing. We also instruct the trial court to vacate defendant's original sentences before resentencing him as a third-felony offender. *See Lyles*, *supra*. Because we have vacated defendant's enhanced sentences and remand this matter for resentencing, we do not address whether defendant's enhanced sentences are unconstitutionally excessive. We also pretermit any discussion pertaining to defendant's argument that his original sentences are excessive since the trial court is instructed to vacate the original sentences prior to imposing the enhanced sentences.

**ERROR PATENT DISCUSSION**

This Court reviews records for errors patent in accordance with Louisiana Code of Criminal Procedure article 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). Our review reveals the following error patent.

*Post conviction relief advisal*

The transcript reflects that on May 3, 2023, the trial court properly advised defendant that he had "two-years, it's a prescriptive period in which to file for post conviction relief. That period would commence upon the Judgment of Conviction and Sentence becoming final." The transcript also reflects that on June 20, 2023, the trial court informed defendant, "that you have two years within which to potentially file for post-conviction relief if applicable. That is a peremptory period - - so the two-year period - - you have to file within that two-year time frame if it's applicable to your case." This advisal is incomplete.

Louisiana Code of Criminal Procedure article 930.8 provides that a defendant shall have two years after the judgment of conviction and sentence has become final to seek post conviction relief. If a trial court fails to advise, or provides an incomplete advisal, pursuant to Louisiana Code of Criminal Procedure

article 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *See State v. Brooks*, 12-226 (La. App. 5 Cir. 10/30/12), 103 So.3d 608, *writ denied*, 12-2478 (La. 4/19/13), 111 So.3d 1030.

In the present case, although the trial court properly advised defendant of the post conviction relief period on May 3, 2023, she gave an incomplete advisal on June 20, 2023. In order to avoid confusion, we advise defendant by this opinion that no application for post conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Louisiana Code of Criminal Procedure articles 914 or 922. *See State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022.

## DECREE

For the foregoing reasons, defendant's convictions are affirmed. The habitual offender sentence is vacated and this matter is remanded to the trial court for resentencing.

**AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED; REMANDED FOR RESENTENCING**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JUNE 5, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-423

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE NGHANA LEWIS (DISTRICT JUDGE)
GEOFFREY M. MICHEL (APPELLEE)
DAVID E. STANLEY (APPELLANT)

HONORABLE BRIDGET A. DINVAUT
(APPELLEE)

J. PHILIP PRESCOTT, JR. (APPELLEE)

**MAILED**