**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**24-73**

**STATE OF LOUISIANA**

**VERSUS**

**DEMON'TAY DEON DUNBAR**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 2022-1511
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CHARLES G. FITZGERALD**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Charles G. Fitzgerald, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

Jacob Longman
Kathryn Jakuback Burke
F. Richard Sprinkle
Jeanna Wheat
Jennifer Carpenter Cameron
Longman Jakuback, APLC
830 Main Street
Baton Rouge, Louisiana 70802
(225) 383-3644
Counsel for Defendant/Appellant:
     Demon'tay Deon Dunbar


Bradley R. Burget
District Attorney,
Seventh Judicial District
Joseph A. Boothe
First Assistant District Attorney
4001 Carter Street, Suite 9
Vidalia, Louisiana 71373
(318) 336-5526
Counsel for Appellee:
     State of Louisiana

**FITZGERALD, Judge.**

Defendant, Demon'tay Deon Dunbar, appeals his conviction for possession of a firearm by a convicted felon.

On June 3, 2022, law enforcement received a report of shots fired in Ferriday, Louisiana. A few hours later, they received information that Defendant and an accomplice had been pointing guns at individuals. They also received a description of Defendant's vehicle. A few hours after that, Defendant's vehicle was stopped and searched.

The search of Defendant's vehicle revealed two loaded guns: the first was a "ghost gun" comprised of parts without serial numbers; the second was an automatic rifle. Defendant was arrested and ultimately charged by bill of information with possession of a firearm by a convicted felon in violation of La.R.S. 14:95.1.

The matter proceeded to jury trial in October 2022. At the close of evidence, the jury unanimously found Defendant guilty as charged. Defendant was then sentenced to serve twenty years at hard labor without the benefit of probation, parole, or suspension of sentence. Defendant now appeals his conviction.

On appeal, Defendant asserts three assignments of error:

1.  The Court violated [Defendant's] right to due process when it excluded felons from the jury venire, in violation of La. C. Cr. P. art. 401, which was amended by the legislature in 2021.

2.  The State violated [Defendant's] right to due process when it did not release the evidence and witness list in this case to defense counsel before trial in violation of *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963)] and *Kyles* [*v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995)].

3.  [Defendant's] trial counsel was ineffective for not filing a Motion to Quash the illegal jury venire and not ensuring that he had access to the evidence to be presented by the [S]tate prior to trial so he could effectively prepare to present a defense on [Defendant's] behalf.

**LAW AND ANALYSIS**

Pursuant to La.Code Crim.P. art. 920, we find no errors patent on the face of the record that require correction.

**First Assignment of Error**

Defendant initially asserts that he was denied due process because felons were excluded from the jury venire in violation of La.Code Crim.P. art. 401, as amended in 2021.

Defendant makes two arguments in support of this assignment. First, Defendant argues that the trial court relied on outdated law to excuse prospective juror Melissa Adams. Specifically, during the trial court's discussion to the jury about juror qualifications, the court relied on the pre-amended version of La.Code Crim.P. art. 401 (2010) and said, "[Y]ou must not be under indictment for a felony or have been convicted of a felony for which you have not been pardoned."[1] The trial court then asked for anyone not meeting the qualification requirements to approach the bench. Prospective juror Adams, in turn, stepped forward and informed the court that she was a felon. The court then asked whether anyone had any questions, and defense counsel replied that he did not. Ms. Adams was excused from service at that point. In essence, Defendant argues that the trial court's misapplication of law violated his due process rights.

In response, the State argues that Defendant failed to preserve this issue for appeal, pointing to La.Code Crim.P. art. 841 and *State v. Gassenberger*, 23-148 (La.App. 5 Cir. 12/20/23), 378 So.3d 820.

---

[1] La.Code Crim.P. art. 401 was amended and reenacted by 2021 La. Acts No. 121, § 1. The amended version of Article 401(A)—which was in effect at the time of jury selection in this case—states that to serve on a jury, a person shall "[n]ot be under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service."

2

In *Gassenberger*, 378 So.3d at 834, the fifth circuit provided the following statement of law:

> To preserve the right to seek appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error as well as the grounds for that objection. La. C.Cr.P. art. 841. A new ground for an objection cannot be presented for the first time on appeal. *State v. Housley*, 05-502 (La. App. 5 Cir. 1/31/06), 922 So.2d 659, 664–65, *writ denied*, 06-1183 (La. 11/17/06), 942 So.2d 531. The Louisiana Supreme Court has consistently held that when a defendant fails to timely raise an objection to irregularities in the jury selection process, review of those irregularities are waived. *State v. Parker*, 04-1017 (La. App. 5 Cir. 3/29/05), 901 So.2d 513, 524, *writ denied*, 05-1451 (La. 1/13/06), 920 So.2d 235 (citing *State v. Snyder*, 98-1078 (La. 4/14/99), 750 So.2d 832).

In our case, like *Gassenberger*, Defendant raises the issue of juror disqualification for the first time on appeal. Because Defendant failed to make this objection at the time prospective juror Adams was excused, the issue is waived and not before this court.

Now to Defendant's second argument. This argument is based entirely on the trial court's previously quoted statement to the jury venire about juror qualifications: that "you must not be under indictment for a felony or have been convicted of a felony for which you have not been pardoned." As Defendant puts it, "That comment [by the trial court] during the qualification of the venire and the resulting dismissal of only a single juror, further demonstrates that the venire itself likely did not include felons drawn from the public either." We disagree. Indeed, Ms. Allen—an admitted felon—was subpoenaed and appeared for jury duty. Thus, felons were obviously not excluded from the jury venire. There is simply nothing in the record that supports this argument.[2]

---

[2] By extension, Defendant argues that his grand jury indictment was also illegally obtained and should be quashed. Yet this case was never presented to a grand jury; the case was initiated by the filing of a bill of information. Hence, the argument is misplaced.

**Second Assignment of Error**

In this assignment, Defendant asserts that the State violated his right to due process by not releasing its evidence and witness list before trial. Indeed, just prior to opening statements, defense counsel stated, "Judge, this is a Ferriday case and you know Ferriday cases are all screwed up. I have to wait and see what the evidence is, if they took any statements." The judge responded, "Well, I know that. I know that. You—you—on opening statements, you don't have to do an opening."

On appeal, Defendant argues that this acknowledgement by the trial court shows that it was aware of "a culture of *Brady* violations within the local government." Yet here, according to Defendant, there is no way to analyze a *Brady* violation because there is no indication of what evidence, if any, was made available to defense counsel during open file discovery. In other words, this assignment is based entirely on defense counsel's statement at trial that they would "have to wait and see what the evidence is." And based on that statement, Defendant now seeks reversal of his conviction under *Brady*.

The Louisiana Supreme Court addressed the requirements for a successful *Brady* claim in *State ex rel. Robinson v. Vannoy*, 21-812 (La. 1/26/24), 378 So.3d 11, *rehearing granted*, 21-812 (La. 3/21/24), 382 So.3d 27. There, the supreme court explained:

> In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused after receiving a request for the evidence violates a defendant's due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. For purposes of the State's due process duty to disclose, no difference exists between exculpatory evidence and impeachment evidence. *State v. Kemp*, 00-2228, p.7 (La. 10/15/02), 828 So.2d 540, 545. The *Brady* rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence, and applies whether a general, specific or even no request at all is made for the evidence. *United States v. Bagley*, 473 U.S. 667, 676, 682, 105 S.Ct.

4

3375, 87 L.Ed.2d 481 (1985); *State v. Knapper*, 579 So.2d 956, 959 (La. 1991).

. . . .

To prevail on his *Brady* claim, defendant was required to demonstrate that (l) the State suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *LaCaze v. Warden Louisiana Correctional Institute for Women*, 645 F.3d 728, 735 (5th Cir. 2011).

*Id*. at 27–29.

Additionally, in *State v. Taylor*, 12-25, pp. 18–20 (La.App. 5 Cir. 6/28/12), 97 So.3d 522, 535–36, the fifth circuit explained:

While the United States Supreme Court has emphasized the prosecution's duty to disclose exculpatory evidence, it has not specifically spoken on the timing of such disclosures. But the Louisiana Supreme Court has held that late disclosure as well as non-disclosure of exculpatory evidence may deprive the defendant of a fair trial. *Kemp*, *supra*; *State v. Williams*, 448 So.2d 659, 665 (La.1984). *See also State v. Lande*, 06-24, pp. 23–24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, 296, *writ denied*, 06-1894 (La. 4/20/07), 954 So.2d 154.

Moreover, discovery violations are not grounds for reversal unless they have actually prejudiced the defendant. *State v. Garrick*, 03-0137, p. 5 (La.4/14/04), 870 So.2d 990, 993 (per curiam); *State v. Strickland*, 398 So.2d 1062, 1067 (La. 1981). Even a discovery violation involving the State's failure to disclose exculpatory evidence does not require reversal under the Due Process Clause "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

In the instant case, Defendant does not identify any evidence that was withheld by the State. This omission is fatal to Defendant's *Brady* claim. In other words, Defendant failed to demonstrate that the State suppressed evidence, that the evidence was favorable to the defense, and that the evidence was material. Hence, Defendant's second assignment is without merit.

**Third Assignment of Error**

In his final assignment, Defendant asserts that his trial counsel was ineffective because he did not file a motion to quash the illegal jury venire and did not obtain access to the State's evidence prior to trial.

At the outset, we note that an ineffective-assistance-of-counsel claim is more appropriately addressed in an application for post-conviction relief. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. This is especially true when the claim is based on evidence not in the record. *State v. Kendrick*, 96-1636 (La.App. 3 Cir. 6/25/97), 699 So.2d 424, *writ denied*, 98-2159 (La. 12/18/98), 731 So.2d 280. However, when the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy. *State v. Ratcliff*, 416 So.2d 528 (La.1982). In our case, the record is sufficient to review Defendant's claim on appeal.

In assessing a claim of ineffectiveness of counsel, the defendant must show two things: (1) that his attorney's performance was deficient, and (2) that the deficiency prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). Both elements must be proven. *State v. Chandler*, 22-1506 (La. 5/5/23), 362 So.3d 347. Here, because Defendant failed to establish prejudice, we need not address whether Defendant proved deficient performance.

As to the standard for determining prejudice, the error is prejudicial if it was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Stated differently, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Defendant here contends that his trial counsel should have been aware of the change to La.Code Crim.P. art. 401 and should have objected when Ms. Allen was excused as a juror. Yet Defendant never explains how this deficiency deprived him of a fair trial. Defendant next contends that when his trial counsel realized the jury venire did not include felons, he should have filed a motion to quash the venire. But as addressed previously, this contention is conceptually flawed. And finally, Defendant contends that his counsel was ineffective by not obtaining the State's evidence prior to trial. According to Defendant, his trial counsel was unprepared and thus should have asked for a continuance. But again, there is no showing that the State had any evidence that was favorable to the defense.

On the contrary, the record evidence of Defendant's guilt includes Ferriday Chief of Police Sam King's testimony that he found Defendant alone in his (Defendant's) vehicle on June 3, 2022. Chief King identified Defendant in open court. The chief also testified about finding the two firearms during the search of Defendant's vehicle. Those firearms were admitted into evidence. And finally, it is undisputed that Defendant was a felon: he had been previously convicted of aggravated assault with a firearm on April 12, 2017. The documents establishing this fact were admitted in evidence through the testimony of Deputy Clerk of Court Becky Perrault.

In the end, even if Defendant had proven deficient performance by counsel, there is nothing in the record to suggest that the outcome of trial would have been different. Defendant thus failed to show that the alleged deficiencies of counsel prejudiced his defense. And his third assignment of error is without merit.

## DISPOSITION

For the above reasons, Demon'tay Deon Dunbar's conviction is affirmed.

**AFFIRMED.**